IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| JESSICA BABB, INDIVIDUALLY, AS THE REPRESENTATIVE OF THE ESTATE OF RICHARD BABB, AND AS NEXT FRIEND OF K.R.B. MINOR, A CHILD, AND KADEN BABB <br><br> VS. <br><br> THE UNITED STATES OF AMERICA THROUGH THE UNITED STATES INTERNATIONAL BOUNDARY AND WATER COMMISSION | CIVIL ACTION NO. 2:25-cv-77 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW, Plaintiffs Jessica Babb, Individually, as the Representative of the Estate of Richard Babb, and as next friend K.R.B., a minor child, and Kaden Babb, (collectively, "Plaintiffs") complaining of and against The United States of America through the United States International Boundary and Water Commission ("United States"). For cause of action, Plaintiffs would respectfully show this Court the following:

**I. NATURE OF THE ACTION**

1. Suit is filed against the United States under 28 U.S.C. § 1346(b). Specifically, the suit involves a claim against the United States for personal injury caused by the negligent act and/or wrongful act/omission of a governmental agency.

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and 28 U.S.C. § 1346(b).

3. Venue is proper in this district pursuant to 28 U.S.C § 1402(b) because the events forming the basis of this complaint took place within the Del Rio Division of the Western District of Texas, specifically Val Verde County, Texas.

4. Plaintiffs gave timely notice to Defendant United States of their claims in accordance with Federal Tort Claims Act on or about December 9, 2024. More than six (6) months have elapsed since filing this claim and there has been no resolution. In accordance with Section 2675 (a) of Title 28 of the United States Code, Plaintiffs deem the claims finally denied by the U.S. International Boundary and Water Commission and so have established the Court's jurisdiction to proceed with their claims against the United States in this suit.

## III. PARTIES

5. Plaintiffs are individuals that reside in Lufkin, Angelina County Texas, which is located in the Eastern District of Texas. At all relevant times, Plaintiffs are citizens of the United States of America.

6. Defendant United States of America through the U.S. International Boundary and Water Commission is a governmental entity that may be served with process by serving the Agent for the Service of Process for the Western District of Texas, Mary F. Kruger, by mailing a certified mail, return receipt requested to the Civil Process Clerk at the office of the United States Attorney for the Western District of Texas, San Antonio Division, located at 601 N.W. Loop 410, Suite 600, San Antonio, Texas, or personal service.

## IV. FACTS

7. The injuries suffered by the Plaintiffs' now deceased husband and father, Mr. Richard Babb, made the basis of this action, arose out of a boat being forced into a structure, controlled by the U.S. International Boundary and Water Commission, by an upstream-directed water current. This event occurred on or about February 3, 2024.

8. On February 3, 2024, Mr. Richard Babb and his passengers, Mr. James Billings, and Mr. Billing's minor child, C.B., launched Mr. Babb's boat into the Rio Grande River.

9. Mr. Babb was operating a 20-foot aluminum boat. The boat was being operated downstream of the Weir Dam located at 29.425019750980766, -101 .04160555042344 (herein referenced as a Weir Dam), approximately 3.2 kilometers southeast of the Amistad Dam.

10. At approximately 6:00 pm, Mr. Babb and his passengers neared the aforementioned Wier Dam when unexpectedly, the boat was caught in the upstream-directed water current created by the submerged hydraulic jump, forcing the boat into the Weir Dam and ejecting all occupants.

11. Mr. Billings and his minor child, C.B., were able to escape the dangerous upstream-directed water current and swim to the riverbank on the United States side.

12. Mr. Billings sustained severe injuries, and his minor daughter was unconscious for a period of time before being revived by her father.

13. Mr. Richard Babb was unable to escape the water current and subsequently drowned. His body was recovered approximately eleven (11) days later, downstream of the initial incident.

14. Plaintiffs specifically contend that Richard Babb did not drown immediately and was certainly aware of his extreme pain and impending death, therefore, Mr. Richard Babb suffered

extreme emotional distress, including fear and anxiety of death, and conscious physical and emotional pain and suffering.

## THE WEIR DAM

15. The Weir Dam in question is under the control and jurisdiction of the Defendant. Plaintiffs specifically allege that the United States International Boundary and Water Commission is legally in charge of inspection and maintenance of the area. The International Boundary and Water Commission's Chief of Security Services, Aaron Haynes, admits to the fact that the Weir dam in question is "an IBWC structure."

```
From:      Aaron Haynes
Sent:      Monday, February 5, 2024 1:36 PM
To:        Frank Fisher; Evelio Siller
Cc:        Sally Spener; Leslie Grijalva; Xochitl Aranda; Rebecca Rizzuti; Luise Martinez; Danny Mendoza; Isela
           Canava
Subject:   RE: Significant Activity Report (SAR) - Amistad Dam
```

Frank,
  Border Patrol is the lead. Technically, they ran into an IBWC structure. I recommend coordinating with BP PAO.

Luise,
  See if you can get a POC for BP PAO in Del Rio Sector and provide to Frank Fisher. Thanks.

AH

Aaron C. Haynes, Chief
Security Services Division
IBWC, U.S. Section
Headquarters
W: (915) 832-4782
C: (915) 238-0468
"If you see something, say something"

---

[1] Emails related to the Incident that were obtained via a Freedom of Information Act request are attached as Exhibit 1 to Plaintiffs' Original Complaint.

16. According to Mario Castro, the OSHA (Occupational Safety and Health Administration) Safety Manager who inspected the Weir Dam in question in 2019 for the IBWC, weir dams are "well-known drowning machines."

> From: Mario Castro
> Sent: Monday, February 5, 2024 11:15 AM
> To: Isela Canava; Lorena Soriano
> Subject: RE: Amistad Dam - Weekend Weir Accident
>
> The weirs are well known drowning machines or also known as the washing machine effect. Once you get between the weir and the boil line there is no escape. (b) (5)
>
> Our responsibility is that the warnings signs are properly in place, readable, and cleared from debris or obstacles. I have written offices for that.

[2]

> Site Visit By: Mario Castro, Safety Manager
> Signature: MARIO CASTRO
> Digitally signed by MARIO CASTRO
> Date: 2019.03.15 10:19:02 -06'00'

[3]

17. The Weir Dam in question is unreasonably dangerous in light of the fact that no warning signs or barriers were in the area to keep boaters from getting close to the dam.

18. The appearance of the upstream-directed water current downstream of the Weir Dam is deceiving and constitutes a hidden danger, not discernable by the general public or Mr. Babb.

19. Plaintiffs specifically allege that there were no warning signs visible to boaters on the downstream side of the Weir Dam.

---

[2] Emails related to the Incident that were obtained via a Freedom of Information Act request are attached as Exhibit 2 to Plaintiffs' Original Complaint.

[3] Inspection report related to the Incident that was obtained via a Freedom of Information Act Request is attached as Exhibit 3 to Plaintiffs' Original Complaint.

20. Plaintiffs specifically allege that there were no buoys or other barriers to prevent boaters from accessing the Weir Dam.

21. It is the established policy of the U.S. International Boundary and Water Commission to post warning signs for the Weir Dam. Despite this policy, there were no warning signs downstream of the Weir Dam.

> **From:** Mario Castro
> **Sent:** Monday, February 5, 2024 11:15 AM
> **To:** Isela Canava; Lorena Soriano
> **Subject:** RE: Amistad Dam - Weekend Weir Accident
>
> The weirs are well known drowning machines or also known as the washing machine effect. Once you get between the weir and the boil line there is no escape. (b) (5) ███████████████
>
> Our responsibility is that the warnings signs are properly in place, readable, and cleared from debris or obstacles. I have written offices for that.

[4]

---

[4] Emails related to the Incident that were obtained via a Freedom of Information Act request are attached as Exhibit 2 to Plaintiffs' Original Complaint.



5

---

[5] Document related to the Incident that was obtained via a Freedom of information Act request is attached as Exhibit 4 to Plaintiffs' Original Complaint.

22.     An inspection by the International Boundary and Water Commission's Occupational Safety and Health Manager was performed on or about June 23, 2017, finding that the warning signs upstream of the Weir Dam were weathered and in need of replacement, and in violation of the USACE, EM 385-1-1 Section 8 and OSHA 1910.145(b)(2).

23.     The inspection report concluded the risk level regarding the worn and faded signs was "high" and could cause civilian injury, death, and property damage. Further, this inspection report establishes the existence of policies enacted by the IBWC to prevent injury and/or death to the public at the time of the February 3, 2024 incident.

| 2- Warning signs are weathered and need replacement. Recommendation: (b) (5) | Weir area | USACE, EM 385-1-1 Sec 8; 08.A.01 – Signs, tags, and labels shall be provided to give adequate warning and caution of hazards. They are provided to instruct and direct workers and the public. OSHA 1910.145(b)(2) | Risk Level – High: Potentials: Noncompliance Agency Reputation Lability for civilian injury, death, property damages. | | |[6]

24.     Plaintiffs specifically allege it is the policy and practice of the United States International Boundary and Water Commission to abide by the recommendations of the U.S. Army Corps of Engineers, Engineering manual 385-1-1 Section 8.

---

[6] The inspection report, gathered through a Freedom of Information Act request, is attached as Exhibit 5 to Plaintiffs' Original Complaint.

> **08.A. Signs, Tags, Labels and Piping Systems.**
>
> 08.A.01 Signs, tags, and labels shall be provided to give adequate warning and caution of hazards. They are provided to instruct and direct workers and the public.
>
> 08.A.02 All warning systems such as signs, tags, and labels shall be visible at all times when the hazard or problem exists, and shall be removed or covered when the hazard or problem no longer exists.
>
> 08.A.03 All employees shall be informed as to the meaning of the various signs, tags, and labels used throughout the workplace and any special precautions that may be required.
>
> 08.A.04 The safety and occupational health (SOH)- related signs in the USACE Sign Standards Manual (EP 310-1-6a) have been determined to meet or exceed ANSI and/or OSHA requirements. USACE facilities shall use signs based upon the specifications in the USACE Sign Manual at permanent USACE-owned and USACE-operated sites. USACE employees and contractors may opt to use signs meeting either the OSHA or ANSI standards for temporary use during the life of a project.

[7]

25. Plaintiffs specifically allege it is the policy and practice of the United States International Boundary and Water Commission to abide by the recommendations of OSHA 1910.145(b)(2).

---

[7] US Army Corps of Engineers Manual, open to the public, is attached as Exhibit 6 to Plaintiffs' Original Complaint.

> **1910.145(a)(1)**
> These specifications apply to the design, application, and use of signs or symbols (as included in paragraphs (c) through (e) of this section) intended to indicate and, insofar as possible, to define specific hazards of a nature such that failure to designate them may lead to accidental injury to workers or the public, or both, or to property damage. These specifications are intended to cover all safety signs except those designed for streets, highways, and railroads. These specifications do not apply to plant bulletin boards or to safety posters.

> **1910.145(c)(1)**
> **Danger signs.**
>
> **1910.145(c)(1)(i)**
> There shall be no variation in the type of design of signs posted to warn of specific dangers and radiation hazards.

[8]

26.   Plaintiffs specifically allege it is the policy and practice of the United States International Boundary and Water Commission to abide by the recommendations and/or requirements of the Federal Emergency Management Agency ("FEMA").

---

[8] OSHA Guidelines, open to the public, are attached as Exhibit 7 to Plaintiffs' Original Complaint.

> ### 4.1. Safety Signage
>
> While efforts should always be made to eliminate or reduce the hazard, this document will focus on the incorporation of safety signage to reduce risk to the public. Additional risk assessment and risk treatment measures should be taken when conducting a full risk assessment.
>
> Based on information gathered through the CDA, FERC, USACE, Reclamation and consultation from industry experts, this best-practices document will provide information based on the establishment of two types of hazardous "zones" along with informational safety signage.
>
> #### 4.1.1. DANGER ZONE
>
> Danger zones are areas where there is a reasonable likelihood of immediate or grave danger capable of causing serious injury or death resulting from exposure to the hazard created by the dam. These areas are typically found near the dam structure both up and downstream of the dam itself.
>
> **Danger Zone Signs:**
>
> Danger signs should denote Danger Zones where the threat to the public is severe and has the potential to cause serious injury or death. Avoid using Danger signs in areas that do not denote this level of threat in an effort maintain public trust in the identified severity of all safety signs. Note that danger signs cannot, in themselves, prevent access to a given region and simply notify the public of a present danger may not be enough. Additional control measures should be installed to reduce access where warranted.

[9]

27.     The Weir Dam is unreasonably dangerous considering the lack of warning signs and/or barriers on the downstream side of the dam to deter boaters from coming near the hidden danger of the upstream-directed water current of the Weir Dam's submerged hydraulic jump.

28.     In order to better inform the public, Brigham Young University created a database of hydraulic jump fatalities that currently shows 785 fatalities at 371 different structures.

---

[9] FEMA Guidelines, open to the public, are attached as Exhibit 8 to Plaintiffs' Original Complaint.

```
Total fatalities recorded:           785
Number of fatal sites:               371
Max. fatalities at a single location: 34
Site with the most fatalities:       PA - Harrisburg - Dock Street Dam
Average fatalities per site:         2.12
```
[10]

29.     Placing warning signs and/or barriers was not a "discretionary function" of the USIBWC, but an "operational function" of carrying out policies previously established by the IBWC.

30.     Defendant knew, or should have known, of the unreasonably dangerous conditions presented by the Weir Dam.

31.     To best illustrate the "hidden danger" posed by low head dams, the links cited in footnote eleven (11) contain actual video footage of tragic incidents involving low head dams, including those of trained fire department personnel and river rescue experts who could not withstand the severe "hydraulic jump" of these dams.

---

[10] BYU Hydraulic Jump Fatalities Database: Https://krcproject.groups.et.byu.net/browse.php.



11

32.     Plaintiffs argue that it is the duty of the Defendant to provide a reasonably safe environment for public boating and use and included within that duty, is the inspection and maintenance of the Weir Dam to ensure it is in safe and suitable condition.

33.     Plaintiffs allege that the Defendant's duty to maintain a safe Weir Dam encompasses the foreseeable risk that a boater might approach the Weir Dam from downstream and get caught in its current.

## FEDERAL TORT CLAIMS ACT

34.     Plaintiffs reallege the foregoing paragraphs.

---

[11] Wright Water YouTube Link: https://www.youtube.com/watch?v=AcrInFgD8gA
Binghamton New York Susquehanna River Dam Rescue Attempt YouTube Link: https://www.youtube.com/watch?v=BKMkXLLBnAQ

35. Defendant United States owed a duty of reasonable degree of care to Plaintiffs. Plaintiffs' damages were proximately caused by the negligence of Defendant United States.

36. Defendant United States was negligent by engaging in the following negligent acts and/or omissions other than what a reasonable and prudent person would have done under the same or similar circumstances, arising from one or more of the following alternative theories of negligence:

   a. Negligent upkeep and inspection of the Weir Dam located at 29.425019750980766, -101.04160555042344;
   b. negligent lack of warning signs or other warning markers near the downstream side of the Weir Dam located at 29.425019750980766, -101.04160555042344;
   c. negligent lack of buoys or other physical safeguards to prevent access to the Weir Dam located at 29.425019750980766, -101.04160555042344 on the downstream side;
   d. failure to exercise reasonable and ordinary care for the safety of persons in or near the weir structure by not keeping it in a reasonably safe condition;
   e. failure to exercise reasonable care, caution and observation; and
   f. failure to take adequate precautions under the circumstances.

37. Each of which acts or omissions were other than what a reasonable and prudent person would have done under the same or similar circumstances. Each of which acts or omissions were a proximate cause of Plaintiffs' damages.

38. As a result of said negligence described above that proximately caused Plaintiffs' damages, Defendant United States is liable to Plaintiffs under the Federal Tort Claims Act.

**V. GROSS NEGLIGENCE**

39. Plaintiffs allege that Defendant United States of America through the International Boundary and Water Commission committed gross negligence with respect to this incident.

40. In Texas, gross negligence, as defined by Chapter 41.001(11) of the Texas Civil Practice and Remedies Code. and reads as follows:

   Gross negligence means an act or omission:

   a. which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
   b. of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Defendant United States had a duty to exercise ordinary care in the upkeep of the Weir Dam and a duty ensure the surrounding safety measures are placed so that the public could not be harmed by the weir structure itself or the conditions the weir structure creates. Defendant United States clearly knew of the extreme risk that the Weir Dam created, as demonstrated by internal emails, previously discussed in paragraph 15.

41. Despite this knowledge, Defendant United States still failed to place any safety measures (e.g. safety signage, buoys, or physical impediments) on the downstream side of the weir dam in question, which constitutes a conscious indifference for a internally well-known and extremely dangerous condition, which ultimately led to the death of Mr. Richard Babb.

## VI. WRONGFUL DEATH DAMAGES - PLAINTIFF JESSICA BABB, INDIVIDUALLY

42. As a result of the untimely death of Mr. Richard Babb, Plaintiff Jessica Babb has suffered from the emotional loss of her husband, including losses of care, maintenance support, spousal support, advice, and counsel that she would, in reasonable probability, have received from her husband during her lifetime, had Mr. Richard Babb lived. It is probable that Plaintiff will continue to incur reasonable mental health treatment in the future. In connection with such injuries, Plaintiff has suffered the following damages:

   a. Medical expenses in the past;
   b. medical expenses that, in reasonable probability, will be incurred by Plaintiff in the future;
   c. mental anguish in the past;
   d. mental anguish that, in reasonable probability, will be incurred by Plaintiff in the future;
   e. loss of consortium in the past;

    f. loss of consortium, in reasonable probability, will be incurred by Plaintiff in the future;
    g. pecuniary loss in the past;
    h. pecuniary loss, in reasonable probability, will be incurred by Plaintiff in the future;
    i. loss of companionship and society in the past;
    j. loss of companionship and society, in reasonable probability, will be incurred by Plaintiff in the future;
    k. loss of inheritance; and
    l. burial expenses in the past.

### VII. WRONGFUL DEATH DAMAGES - PLAINTIFF KADEN BABB

43. As a result of the untimely death of Mr. Richard Babb, Plaintiff Kaden Babb has suffered from the emotional loss of his father, including loss of care, maintenance support, advice, and counsel that he would, in reasonable probability, have received from his father during his lifetime, had Mr. Richard Babb lived. It is probable that Kaden Babb will continue to incur reasonable mental health treatment in the future. In connection with such injuries, Plaintiff has suffered the following damages:

    a. Medical expenses in the past;
    b. medical expenses that, in reasonable probability, will be incurred by Plaintiff in the future;
    c. pecuniary loss in the past;
    d. pecuniary loss, in reasonable probability, will be incurred by Plaintiff in the future;
    e. loss of companionship and society in the past;
    f. loss of companionship, in reasonable probability, will be incurred by Plaintiff in the future;
    g. mental anguish in the past;
    h. mental anguish, in reasonable probability, will be incurred by Plaintiff in the future; and
    i. loss of inheritance.

### VIII. WRONGFUL DEATH DAMAGES – PLAINTIFF K.R.B., A MINOR CHILD

44. As a result of the untimely death of Mr. Richard Babb, Plaintiff K.R.B., a minor child, has suffered from the emotional loss of his father, including loss of care, maintenance support, advice, and counsel that he would, in reasonable probability, have received from his father during his lifetime, had Mr. Richard Babb lived. It is probable that Plaintiff K.R.B., a minor child,

will continue to incur reasonable mental health treatment in the future. In connection with such injuries, Plaintiff has suffered the following damages:

a. Medical expenses in the past;
b. medical expenses that, in reasonable probability, will be incurred by Plaintiff in the future;
c. pecuniary loss in the past;
d. pecuniary loss, in reasonable probability, will be incurred by Plaintiff in the future;
e. loss of companionship and society in the past;
f. loss of companionship, in reasonable probability, will be incurred by Plaintiff in the future;
g. mental anguish in the past;
h. mental anguish, in reasonable probability, will be incurred by Plaintiff in the future; and
i. loss of inheritance.

## IX. SURVIVAL DAMAGES - THE ESTATE OF RICHARD BABB

45. Plaintiffs bring the action on behalf of the Estate of Richard Babb. This survival action claim is brought on behalf of the legal heirs under the intestacy laws of Texas, as allowed under Tex. Civ. Prac. & Rem Code Section 71.021.

46. As a proximate result of the occurrence made the basis of this suit, Mr. Richard Babb died on February 3, 2024, after undergoing severe conscious pain and suffering. In addition, his boat was heavily damaged. Plaintiffs have paid a reasonable and customary charge for his funeral and burial and have had the decedent's boat repaired. In connection with such instances, the decedent, Mr. Richard Babb, suffered the following damages:

a. Physical pain and suffering in the past;
b. mental anguish in the past;
c. death; and
d. repair costs to the decedent's personal property, a 20-foot aluminum boat.

## X. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that Defendant be cited to appear and answer, and that on final trial, Plaintiffs receive a judgment against Defendant for all

relief requested, for costs, for pre-judgment and post judgment interest to the full extent as allowed by law, and for such other and further relief, general and special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

                                            Respectfully submitted,

                                            **CLARK │VON PLONSKI │ANDERSON**

                                            By: *Collen A. Clark*
                                            **COLLEN A. CLARK**
                                            State Bar No. 04309100
                                            **JACOB L. von PLONSKI**
                                              State Bar No. 24098554
                                            **R. CONNOR BARBE**
                                            State Bar No. 24108598
                                            3500 Maple Avenue, Suite 1250
                                            Dallas, Texas 75219
                                            214-780-0500
                                            214-780-0501 Facsimile
                                            eservice@cvpalaw.com